## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW M MEXICO

**CAYLINA J. RODRIGUEZ,**

       **Plaintiff,**

    **vs.**                                     **Civ. No. 12-272 ACT**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Motion to Remand or Reverse and Brief in Support of Motion to Remand ("Motion") of the Plaintiff Caylina J. Rodriguez ("Plaintiff"), filed October 10, 2012 [Docs. 17 and 18].  The Commissioner of Social Security ("Defendant") filed a Response on December 27, 2012 [Doc. No. 19], and Plaintiff filed a Reply on January 13, 2013 [Doc. No. 20].  Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that Plaintiff's Motion is well taken and will be **GRANTED**.

## I.  PROCEDURAL RECORD

    Plaintiff was born on October 7, 1990, and began receiving Supplemental Security Income ("SSI") as a child after meeting the requirements for Listing 111.03 for seizure disorder secondary to cerebral cavernous malformations.  [Tr. 85, 153, 209.]  On August 27, 2009, the Social Security Administration notified Theresa C. Rodriguez for Caylina Rodriguez that "[e]arlier we told you that we were reviewing Caylina's case to see if she is disabled under the definition of disability for adults.  After reviewing all the information carefully, we have decided

that she is no longer eligible for Supplemental Security Income." [Tr. 56-58.]  On September 24,

2009,  Plaintiff requested reconsideration of the decision to terminate her benefits and stated that

her "disabling birth defects and subsequent medical conditions did not cease to exist or get better

when she turned 18." [Tr. 60.] On October 30, 2009, Plaintiff also reported to Social Security

that she has persistent back pain, headaches, consistent ear ringing, and tingling in her back,

legs, and arms. [Tr. 160.]  On April 16, 2010, Plaintiff was notified that a hearing was scheduled

for May 24, 2010, before a disability hearing officer. [Tr. 64.] On April 21, 2010, Plaintiff

waived her right to attend the hearing and indicated that the disability hearing officer could make

a decision based on the evidence in the file. [Tr. 68.]  On June 18, 2010, Plaintiff was notified

that the disability hearing officer had determined she was no longer disabled as of June 1, 2010.

[Tr. 18, 92.] Plaintiff was provided with instructions regarding her right to request a hearing

before an Administrative Law Judge. [Tr. 92.] On June 28, 2010, Plaintiff requested a hearing by

an Administrative Law Judge. [Tr. 95.] On June 8, 2011, Plaintiff was notified that a hearing was

scheduled for July 26, 2011.  [Tr.102.]

   The ALJ conducted a hearing on July 26, 2011. [Tr. 31-52.]  At the hearing, Plaintiff

was represented by Attorney Helen Lopez.  On August 15, 2011, the ALJ issued an unfavorable

decision.  In his report, the ALJ found that since June 1, 2010, the Plaintiff had the following

severe impairments: cerebral cavernous malformations (CCMI), a seizure disorder, headaches,

congenital scoliosis status post surgical correction, choanal atresia (congenital blockage of the

nasal passage), an adjustment disorder with mixed anxiety and depressed mood, and borderline

intellectual functioning. [Tr. 18.]  However, the ALJ concluded that the Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Id.]  The ALJ also found that since

2

June 1, 2010, Plaintiff had the residual functional capacity to perform a full range of light work that is unskilled and allows seizure precautions. [Tr. 19-20.] The ALJ determined Plaintiff's additional limitations have little or no effect on the occupational base of unskilled light work. [Tr. 25.] The ALJ concluded that Rule 202.17 of the Medical-Vocational Rules was an applicable framework in finding the Plaintiff not disabled. [Id.]

On August 23, 2011, Plaintiff requested a review of the ALJ's decision and stated that "[c]laimant was determined to be disabled as a child and wrongfully terminated upon reaching the age of 18 with no credible substantial evidence of cessation of disability.  The judge's decision to the contrary is not supported by substantial evidence." [Tr. 12.] On January 18, 2012, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. [Tr. 1.] On March 15, 2012, the Plaintiff filed her Complaint for judicial review of the ALJ's decision. [Doc. 1.]

The Plaintiff completed the tenth grade and attended special education classes.  [Tr. 150, 165.] She is attempting to get her GED. [Tr. 165.]  The Plaintiff has not engaged in substantial gainful activity since June 1, 2010, and has no past relevant work. [Tr. 25.]

## II.  STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  In order to qualify for disability insurance benefits, a claimant must establish a severe physical or

3

mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).  Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).  The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (quotation omitted).

---

[1]  Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(C).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

## III.  MEDICAL HISTORY

Plaintiff's medical history is significant for choanal atresia,[2] congenital scoliosis,[3] and cerebral cavernous malformations.[4] [Tr. 267, 281.] She underwent four separate operations for choanal atresia before the age of three. [Tr. 281.] She also underwent surgery for her scoliosis at the age of five. [Tr. 183, 189.] At the age of eight, Plaintiff was diagnosed with cerebral cavernous malformations which led to seizures and associated headaches. [Tr. 189.]  Plaintiff began receiving Supplemental Security Income as a child in May 2001 because of her seizure disorder.  [Tr. 85.]

### A.     Leslie Anne Morrison, M.D. - UNM Department of Neurology

Plaintiff has been followed since childhood by Neurologist Leslie Anne Morrison for her cerebral cavernous malformations.  The Administrative Record contains two relevant letters prepared by Dr. Morrison following Plaintiff's annual exams on February 13, 2009, and June 21, 2010.

On February 13, 2009, Dr. Morrison notes as follows:

Physical examination shows her to look well.  She is short in stature partly due to a short trunk.  She has normal cardiac sounds, lungs are clear to auscultation.  Surgical scar along spine, well healed.  No cutaneous abnormalities along spine, trunk or extremities of angiomas.  She does wear corrective lenses.  The cranial nerve exam

---

[2]  Choanal atresia is a life threatening birth defect in which the nasal passage does not properly develop during prenatal life. http://choanalatresia.org/aboutca.html.

[3]  Congenital scoliosis refers to a spinal deformity caused by vertebrae that are not properly formed. http://www.srs.org/patient_and_family/scoliosis/congenital_scoliosis.

[4]  Cerebral cavernous malformations are collections of small blood vessels (capillaries) in the brain that are enlarged and irregular in structure. These capillaries have abnormally thin walls, and they lack other support tissues, such as elastic fibers, which normally make them stretchy. As a result, the blood vessels are prone to leakage, which can cause the health problems related to this condition. Cavernous malformations can occur anywhere in the body, but usually produce serious signs and symptoms only when they occur in the brain and spinal cord (which are described as cerebral).  http://ghr.nlm.nih.gov/condition/cerebral-cavernous-malformation.

> shows full extraocular movements, no nystagmus, symmetric facial expression, midline tongue, and palate lift. Hearing intact. Motor exam showing essentially normal strength, bulk and tone. Stretch reflexes are 2 to 3+ and symmetric and no clonus. Toes downgoing. Reasonably good one foot balance and normal rapid repetitive and rapid alternating movements. No tremor. Normal gait despite history of scoliosis.

[Tr. 190.] Dr. Morrison indicated that Plaintiff's seizures were very well controlled on Carbatrol by mouth twice a day and that Plaintiff had been seizure free for three years. [Tr. 189.] Dr. Morrison discussed with Plaintiff the possibility of slowly weaning off the medication for purposes of learning how to drive. [Id.] Dr. Morrison also advised Plaintiff to continue taking Amitriptyline[5] at her current dose. [Tr. 190.]

On June 21, 2010, Plaintiff saw Dr. Morrison complaining of a sudden sharp pain and drooping on her eyelid. [Tr. 267.] Plaintiff reported when this happens she feels as if she is going to have a seizure. [Id.] Plaintiff told Dr. Morrison that the episodes she was having of biting her tongue at night were much better since she had been on Trileptal[6] and Topamax.[7] Dr. Morrison's physical exam indicates as follows:

> Physical examination today shows her to be afebrile, pulse is 75, respirations 12, blood pressure 96/62, weight of 40.7 kilograms, height 151 centimeters, oxygen saturation 100% on room air. Caylina has no dysmorphic features, she has no cutaneous abnormalities of neurological significance. She has normal cardiac sounds, no wheezing today. Her trunk is short and there is obvious mild to moderate curvature of her spine. Extremities are otherwise without deformity. Her extraocular movements are conjugate and full. There is mild nystagmus with end gaze on either

---

[5]  Amitriptyline is a tricyclic antidepressant. It affects chemicals in the brain that may become unbalanced. Amitriptyline is used to treat symptoms of depression.  http://www.drugs.com/amitriptyline.html.

[6]  Trileptal is used to treat partial seizures in adults and children who are at least 2 years old. http://www.drugs.com/trileptal.html.

[7]  Topamax is used alone or in combination with other medications to treat seizures in adults and children who are at least 2 years old. Topamax is also used to prevent migraine headaches in adults. It will only prevent migraine headaches or reduce the number of attacks. It will not treat a headache that has already begun. http://www.drugs.com/topamax.html.

side.  Tongue is midline, moves well.  Hearing is intact.  Her motor examination
shows normal strength, bulk and tone.  Stretch reflexes are 2+ and symmetric.  Toes
are downgoing.  Good one foot balance.  She performs rapid repetitive and rapid
alternating movements, symmetrically and well, and gait is fairly normal.

[Tr. 267.] Dr. Morrison notes that Plaintiff's severe headaches are being treated with Topamax,

and that her epileptic seizures are currently being controlled with a combination of Carbatrol and

Trileptal. [Tr. 268.]  Plaintiff was also prescribed Ativan in the event she has a prolonged seizure

or a series of seizures. [Id.]

### B.    El Centro Family Health

Plaintiff has been followed since childhood at El Centro Family Health in Peñasco,

New Mexico, for choanal atresia, congenital scoliosis, cerebral cavernous malformations, right

and left sensory neural hearing loss, asthma, epilepsy, and learning difficulties. [Tr. 196.] The

current records contained in the Administrative Record indicate routine visits involving an upper

respiratory infection and issues with birth control, routine lab work, various requests for

referrals, and a June 2009 visit where Plaintiff discussed with Dr. McCoy whether she should be

evaluated for a heart murmur. [Tr. 197-203, 220-222.] At that particular visit, Dr. McCoy's

exam was within normal limits and he reassured Plaintiff that the research showed no link

between her cerebral cavernous malformations and cardiac conditions.  [Tr. 198.]

### C.    Physical Residual Functional Capacity Assessment - Dr. Michael Finnegan

On August 25, 2009, Dr. Michael Finnegan prepared a Physical Residual Functional

Capacity Assessment based on his review of Plaintiff's medical records. [Tr. 208-215.]

Dr. Finnegan notes that despite Plaintiff's scoliosis, exam shows she has normal gait, normal

muscle strength, bulk and tone, and normal neurologic findings.  [Tr. 209.] In addition,

Dr. Finnegan states that because Plaintiff has not had any seizures for the last three years and is

tapering her medication, this indicates good seizure control.  Dr. Finnegan determined that Plaintiff had minimal exertional limitations with lifting and positional changes associated with her scoliosis, and that Plaintiff should avoid heights and hazards because of her seizure disorder. [Tr. 209, 212.]

     D.    **<u>Southwestern Ear, Nose and Throat Associates</u>**

Plaintiff was seen by Dr. David Brown of Southwestern Ear, Nose and Throat Associates in July 2004 and September 2009. [Tr. 281-283.]  Plaintiff was referred for an evaluation of hearing loss, tinnitus and uncontrolled seasonal allergies. [Id.] An audiogram from each visit showed normal hearing sensitivity on both sides. [Id.]

     E.    **<u>Physical Residual Functional Capacity Assessment - Dr. N. D. Nickerson</u>**

On January 7, 2010, N. D. Nickerson prepared a Physical Residual Functional Capacity Assessment based on his review of Plaintiff's medical records. [Tr. 226-233.]  Dr. Nickerson notes Plaintiff's "additional allegations including persistent back pain, constant ear ringing, lazy right eye, and tingling in back, legs and arms." [Tr. 227.]   Dr. Nickerson commented as follows:

> Claimant's past medical hx is remarkable for cerebral cavernous malformation surgically treated in the remote past, with residual sequelae of seizure disorder dx in 1999.  Formal neurology f/u on 2/13/09 reported that claimant has been seizure free for past 3 years on Carbatrol although there is episodic dizziness and headache.  Past medical hx is also remarkable for congenital scoliosis surgically treated in 1995 (age 5) with residual sequelae of shortening of the back (short trunk) and some mild residual scoliosis.   There are no neurologic deficits.  At 2/13/09 neuro f/u, hearing was intact and claimant wore corrective lenses.  Past medical hx is also remarkable for choanal atresia and L5 hemivertebrae, both surgically treated in childhood, bilateral sensorineural hearing updated/addition MER is remarkable for:  9/1/09 f/u with PCP diagnosed URI; no exacerbation of asthma.  Wt. 94#, Ht. 60" in 5/09; 9/8/09 given an ENT referral to evaluate for possible progression of mild hearing loss; 11/2/09 c/o increasing pain in lower back.  Wt. 97#.  Exam essentially unremarkable.
>
> The additional MER appears consistent with the prior assessment.  Claimant has not sought medical attention for c/o lazy right eye or ringing in ear (tinnitus).

[Tr. 226.]  Dr. Nickerson determined that Plaintiff had postural limitations associated with her scoliosis, and that she should avoid workplace hazards given her history of seizures. [Tr. 226, 230.]

   **F.**    **Robert Krueger, Ph.D.**

On February 16, 2010, Plaintiff had a psychological evaluation by Robert Krueger, Ph.D., based on a referral from Disability Determination Services.  [Tr. 235-242.] Dr. Krueger states the reason for the referral is to obtain information about Plaintiff's "current cognitive/emotional/behavioral functioning, to assist with diagnosis and to assist with processing her disability claim." [Tr. 235.] Based on Plaintiff's history of learning problems, special education, and depression, Dr. Krueger administered the Wechsler Adult Intelligence Scale and Beck Depression Inventory. [Id.]  Dr. Krueger assessed Plaintiff as follows:

> The results of the current evaluation suggest that Caylina can be expected to have moderate impairment with understanding, remembering, and following simple work instructions and marked impairment with complex or detailed instructions.  The current test scores also suggest moderate to marked impairment with maintaining pace and persistence in work environments.  Caylina can be expected to have marked impairment with adjusting to changes in work environment.  At this time she can be expected to have marked impairment with traveling to distant places alone.  It appears that Caylina has not been able to establish an independent lifestyle, and her mother stated that Caylina requires daily supervision.  Also, because of the risk of having seizures Caylina has never obtained a driver's license and does not operate motor vehicles.  Because of her social and emotional immaturity along with having some difficulties with verbal communication, Caylina can be expected to have moderate impairment in relationships with coworkers, supervisors, and the general public.  Because of her cognitive impairment and physical limitations, Caylina can be expected to have moderate to marked impairment with being aware of and reacting appropriately to dangers in work environments.  These clearly are long-term problems, which can be expected to persist for more than one year.

[Tr. 239.]  Dr. Krueger diagnosed Plaintiff as follows:

   Axis I:        Adjustment Disorder with Mixed Anxiety and Depressed Mood
                  Communication Disorder NOS (provisional diagnosis)

9

Axis II:        Borderline Intellectual Functioning (FSIQ = 72 = 3rd percentile)

Axis III:       Diagnosis deferred; see medical records

Axis IV:        Psychological stressors appear to be moderate

Axis V:         GAF, Recent: 45[8]

[Tr. 238.]

### G.   Mental Residual Functional Capacity Assessment - Nancy K. Morrison, M.D.

On March 4, 2010, State agency medical consultant Dr. Nancy Morrison prepared a

Mental Residual Functional Capacity Assessment based on her review of Plaintiff's medical

records. [Tr. 243-246.] Dr. Morrison determined that Plaintiff had moderate limitations in (1) her

ability to understand and remember detailed instructions, (2) her ability to perform activities

within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3)

her ability to sustain an ordinary routine without special supervision, (4) her ability to complete a

normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods; (5)

her ability to interact appropriately with the general public, (6) her ability to get along with

coworkers or peers without distracting them or exhibit in behavioral extremes, (7) her ability to

respond appropriately to changes in the work setting; (8) her ability to travel in unfamiliar places

or use public transportation; and (9) her ability to set realistic goals or make plans independently

of others.  [Tr. 243-44.]   Dr. Morrison also determined that Plaintiff had marked limitations in

---

[8]  The GAF is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning."  Diagnostic & Statistical Manual of Mental Disorders, 5th ed. (1994) ("DSM-IV"), p. 32.  Individuals with a GAF between 41 and 50 experience serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)  *Id.*

her ability to carry out detailed instructions. [Tr. 243.]  Dr. Morrison summarized Plaintiff's

functional capacity assessment as follows:

> This now 19 y/o clmt is up for her age-18 redetermination.  Benefits were ceased
> initially solely on physical grounds.  She appealed that cessation but did not allege
> worsening , new conditions, or mental conditions.  However, given that she has
> previously been in SpEd, it was felt prudent to assess her mentally at this time before
> completing her cessation.  The clmt does appear to be somewhat immature, in part
> due to her small stature but also due to her behaviors. She has borderline intelligence
> and mild features of depression.  However, it is reasonable to conclude that she can
> understand, remember and carry out simple instructions, make simple decisions,
> attend and concentrate for 2 hrs at a time, interact adequately with co-workers and
> supervisors, and respond appropriately to changes in a routine work setting.

[Tr. 245.]

### H.    <u>Psychiatric Review Technique - Dr. Nancy K. Morrison</u>

On March 4, 2010, State agency medical consultant Dr. Nancy K. Morrison prepared a

Psychiatric Review Technique based on her review of Plaintiff's medical records. [Tr. 247-260.]

She assessed Plaintiff's medical disposition based on Listing 12.02 - Organic Mental Disorders

and Listing 12.04 Affective Disorders.  [Tr. 247.]  She indicates that Plaintiff's functional

limitation is mild with respect to maintaining social functioning and maintaining concentration,

persistence, or pace. [Tr. 257.]  She further indicates that Plaintiff's functional limitations are

moderate with respect to activities of daily living. [Id.]

### <u>ANALYSIS</u>

Plaintiff first argues that this case must be remanded because this is a cessation case and

as such the burden rests with the Commissioner to prove that Plaintiff's condition has improved

before her benefits can be discontinued. [Doc. 18 at 3.]  Plaintiff further argues that the basis for

the ALJ's determination,  that Plaintiff was no longer disabled based on a "redetermination of

disability under the rules for adults who file initial applications,"contradicts his statement at the

administrative hearing at which time he stated this was a cessation case based on Plaintiff's medical improvement.  [Id. at 5.]  Because the ALJ's determination did not find that the Plaintiff had improved, Plaintiff asserts that judgment for Plaintiff should be granted as *res judicata*. [Id. at 5.] Plaintiff also asserts that due process requires a hearing be conducted on the issues alleged and agreed to between the judge and the claimant. [Id. at 4.]

The Defendant contends that the ALJ properly followed the regulations regarding redeterminations when an individual attains age 18, *i.e.,* 20 C.F.R. 416.987(b) and 20 C.F.R. 416.920(c) through (h), and that his decision adhered to those regulations. [Doc. 19 at 4-5.] Accordingly, the Defendant asserts that Plaintiff's claim in this regard should be dismissed.

Here, the Court agrees with the Defendant that in making his determination, the ALJ properly followed the regulatory and legal standard regarding redeterminations when an individual attains age 18.  That said, the ALJ notified the Plaintiff and pronounced at the hearing a different regulatory and legal standard than the one he used to make his determination.  Thus, the first issue before the Court is whether the ALJ's notification and pronouncement of an incorrect regulatory and legal standard amounts to improper notice and an unfair hearing even though the ALJ's determination was based on the proper regulatory and legal standard.  For the reasons discussed below, the Court finds that the due process requirements for discontinuation of Social Security benefits were not satisfied and that Plaintiff did not receive a full and fair hearing.  This is reversible error and this case must be remanded for a new hearing.

Plaintiff began receiving Supplemental Security Income as a child in May 2001 because of her seizure disorder.  [Tr. 85.] Social Security regulations require that a claimant's entitlement to benefits must be reviewed periodically.  20 C.F.R. § 416.994(a).  Social Security regulations also require that a claimant's eligibility for benefits must be redetermined when a claimant

reaches the age of 18.  20 C.F.R. § 416.987.  Each of these regulatory requirements set forth specific rules and burdens of proof depending on whether a claimant's eligibility is being reviewed or redetermined.  In this case, the regulatory and legal standard represented to the Plaintiff to determine the cessation of her benefits was unclear.

Initially Plaintiff received notice that her case was being reviewed to determine whether Plaintiff was disabled "*under the definition of disability for adults*." [Tr. 56.] (Emphasis added.) Similarly, the disability hearing officer *used the adult criteria* to prepare her report that determined Plaintiff was no longer disabled. [Tr. 85.] (Emphasis added.)  However, when Plaintiff subsequently requested a hearing before an Administrative Law Judge, she received a Notice of Hearing that informed her as follows:

**Issues I Will Consider**

I will decide whether you continue to be disabled.  To decide this issue, I will apply the standard stated in section *1614(a)(4)*[9] of the Social Security Act.  I will consider:

_____

[9]  Section 1614(a)(4) states in pertinent part:

(4) A recipient of benefits based on disability under this title may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by -

    (A) in the case of an individual who is age 18 or older -

        (i) substantial evidence which demonstrates that -

            (I) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

            (II) the individual is now able to engage in substantial gainful activity; or

        (ii) substantial evidence (except in the case of an individual eligible to receive benefits under section 1619) which -

            (I) consists of new medical evidence and a new assessment of the individual's residual functional capacity, and demonstrates that-

                (aa) although the individual has not improved medically, he or she is nonetheless

Whether there has been any medical improvement relating to your ability to work since we last found you disabled; and

Whether one of the exceptions to medical improvement stated in the Act and our regulations applies.

[Tr. 104.] (emphasis added.)  In addition, the ALJ stated in his opening statement at the hearing as follows:

| ALJ: | . . . This is a cessation case --- |
|---|---|
| ATTY: | Yes, it is. |
| ALJ: | . . . She was on disability and medical improvement?  Is that what they're claiming? |
| ATTY; | Yes. |
| ALJ: | Okay.  That there's been an improvement in her case and she's – no longer meets the – . . . disability? |

[Tr. 33.]

When the ALJ subsequently prepared his decision, he stated the applicable law as follows:

_____

a beneficiary of advances in medical or vocational therapy or technology (related to the individual's ability to work), and

(bb) the individual is now able to engage in substantial gainful activity; or

(II) demonstrates that -

(aa) although the individual has not improved medically, he or she has undergone vocational therapy (related to the individual's ability to work), and

(bb) the individual is now able to engage in substantial gainful actvity; or

(iii) substantial evidence which demonstrates that, as determined on the basis of new or improved diagnostic techniques or evaluations, the individual's impairment or combination of impairments is not as disabling as it was considered to be at the time of the most recent prior decision that he or she was under a disability or continued to be under a disability, and that therefore the individual is able to engage in substantial gainful activity.

14

> Section 1614(a)(3)(H) of the Social Security Act (the Act), provides that individuals who are eligible for supplemental security income benefits as children (individuals who have not attained age 18) for the month preceding the month in which they attain age 18, must have their disability redetermined under the rules for disability used for adults.  *Section 1614(a)(3)(H) of the Act also provides that the medical improvement review standard in <u>section 1614(a)(4) does not apply</u> to disability redeterminations at age 18.*  Instead, the definition of disability used for adults who filed new applications for supplemental security income benefits based on disability must be applied .

[Tr. 16.] (Emphasis added.)

The problem here is that the two regulatory and legal standards represented to the Plaintiff during her redetermination process bear two distinct burdens of proof.  Under the adult criteria standard, the familiar five-step sequential evaluation process is used and the burden of proving a disability rests with the claimant. 42 U.S.C. § 423(d)(5) (1988).  Under the medical improvement standard, the burden of proving medical improvement rests with the Social Security Administration.  *Byron v. Heckler*, 742 F.2d 1232, 1236 (10th Cir. 1983) ("[i]n termination of benefit cases, benefits may not be discontinued without a showing that the claimant's condition has improved.").

Due process requires that a disability benefits recipient be given notice and an opportunity to be heard before her entitlement to benefits may be terminated. *Mathews v. Eldridge*, 424 U.S. 319, 332–333, 348–49, 96 S.Ct. 893, 901–902, 909–10, 47 L.Ed.2d 18 (1976).  To satisfy due process, the notice accompanying a discontinuation of Social Security benefits "must be reasonably calculated to afford parties their right to present objections."  *Rolen v. Barnhart*, 273 F.3d 1189, 1191 (9th Cir. 2001)(quoting *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990)(citation omitted)).  Moreover, the notice must not be so "misleading that it introduces a high risk of error into the disability decisionmaking process." *Id.*  Social Security regulations require that a claimant be notified regarding which disability rules will be applied in

redetermining their ongoing eligibility for payments.  20 C.F.R. § 416.987(d)(iii).  In addition, the notice of hearing before an administrative law judge "will contain a statement of the specific issues to be decided[.]" 20 C.F.R. § 416.1438(b).  Finally, an adjudicatory hearing before an administrative tribunal must afford a fair trial in a fair tribunal as a basic requirement of due process.  *Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir. 1976)(*citing Withrow v. Larkin*, 421 U.S. 35, 46-47, 95 S.Ct. 1456, 45 L.Ed.2d 712; *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488; *Amos Treat & Co. v. SEC*, 113 U.S.App.D.C. 100, 306 F.2d 260.  *See also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(an ALJ has a duty to conduct a full and fair hearing).

Here, the due process requirements required for discontinuation of Social Security benefits were not satisfied and Plaintiff did not receive a full and fair hearing.  Although Plaintiff received notice of a hearing before an administrative law judge, the notice contained a regulatory and legal standard that differed from the regulatory and legal standard the ALJ ultimately used in making his determination.  The regulatory and legal standard cited in the ALJ's Notice of Hearing was 1614(a)(4).  Under this standard, the burden of proving medical improvement rests with the Social Security Administration.  The regulatory and legal standard ultimately applied by the ALJ to make his decision was 1614(a)(3)(H).  Under this standard, the burden of proving disability rests with the Plaintiff.  Given that the notice articulated a regulatory and legal standard in which the Social Security Administration bore the burden of proof, the Court finds it to be misleading and introduced a high risk of error into the disability decisionmaking process.  The ALJ further muddied the redetermination process when he stated at the hearing itself that the issue to be decided was whether there has been any medical improvement relating to Plaintiff's ability to work – a burden that rests with the Social Security Administration.  This

16

misrepresentation amounts to an unfair hearing because Plaintiff was proceeding under a regulatory and legal standard different from the regulatory and legal standard ultimately used by the ALJ to make his determination.

Although the Defendant did not raise a harmless error argument, the Court finds that this error cannot be overcome as harmless.  The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.  *See Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S.Ct. 1696, 1706, 173 L.Ed.2d 532 (2009).  However, despite the burden to show prejudice being on the party claiming error by the administrative agency, the reviewing court can determine from the "circumstances of the case" that further administrative review is needed to determine whether there was prejudice from the error.  *McCleod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)(quoting *Shinseki v. Sanders*, 556 U.S. at 410).  Where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency "can decide whether reconsideration is necessary."  *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. at 414).  Here, the Court finds that the circumstances of the case show a substantial likelihood of prejudice because the Plaintiff was proceeding at the hearing under a regulatory and legal standard wherein she believed, based on the notice she was provided, that the Social Security Administration had the burden of proving medical improvement.

For these reasons, the Court finds that the due process requirements for discontinuation of Social Security benefits were not satisfied and that Plaintiff did not receive a full and fair hearing.  This case is remanded for a new hearing and notification that is consistent with the correct regulatory and legal standard regarding redeterminations when an individual attains age 18.

The Court will not address Plaintiff's remaining claims of error. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## V.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision [Doc. 17] is GRANTED for proceedings consistent with this memorandum opinion.

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**